**7901**

Rozel Mc. Williams—

—vs—

Frank R. Reith, Jr.—

No. **7 9 0 1**.

Court of Appeal,

Parish of Orleans.

————————————

—————

Dinkelspiel. J.

238

Dinkelspiel. J.

This suit is based on the following agreement;-
" I hereby irrevockably appoint R. Mc. Williams, his heirs
or successors, my agent, and authorize my agent to sell my
property known as No. 2837-39 Berlin Street, with all the
ground and improvements appertaining or belonging thereto,
including the gas and electric fixtures and plumbing fix-
tures now attached to the building, said ground measuring
40 ft. front by a depth of 120 ft., for the price and sum
of $7.000.00. or anyother amount which may hereafter be
agreed upon.  I give my agent sole controll of same for
180 days from date, and further agree not to interfere in
the sale of the property during the term of this contract.
I also bind myself to refer all applicants for the purchase
of said property to my agent.  At the expiration of said
180 days, I will, within five days, notify my agent in
writing, whether or not I desire this contract discontin-
ued, and my failure to do so, shall operate as a renewal
of this contract for a term of an additional 180 days.
When this property is sold, I agree and bind myself to
pay my agent, a commission of three per cent, no matter by
whom the property has been sold. In the event of not sale
being effected during the existance of this contract,no
charges will be made for commission, provided, however,
that if a sale is made after the expiration of this contract,
to a party with whom negotiations had been opened by R. Mc.
Williams, that the commission named herein above will be
paid to R. Mc. Williams.  It is understood and agreed, that
my agent's labor ceases when a deposit is put up, and the
commission is erned, and will be paid by me whether the
title to said property is accepted or rejected by purchaser.
My agent is authorized to accept a deposit of ten per cent
of the purchase price, and in case of suit to recover any

239

part of the commission due, twenty-five *per cent* would be added for attorneys fees." Signed- Frank Reith, Jr."

It appears from th the petition of plaintiff, substantially, that the foregoing contract had been entirely annulled by defendant who had disposed of this property irrespective and independant of plaintiff, and that plaintiff's contract of employment expressly provides, that if said property was sold during the existance of the contract, that a brokers charge of three per cent of the selling price should be paid to plaintiff; he avers that during the existance of said contract the proprrty was sold by defendant, and that therefore the commission of three per cent , together with attorneys fees, the property having been sold for $6.390.00, and the attorneys fees of twenty-five per cent, making the amount claimed $191.00. for which he prays for judgment.

Defendant in his answer, admits Article 1, denies Article 2, to Article 3, he admits, that if the property was sold during the existance of the contract a brokerage charge of three per cent should have been paid plaintiff, but denies specially that the property was sold during the existance of the contract, and further denies that any compensation is due plaintiff.

In answer to Article 5, defendant avers, that on April, 5th. 1917, defendant notified plaintiff, in writing, that the contract had expired, and that he did not need plaintiff's services any longer, which terminated the contract, and annexed hereto, his answer, and makes part thereof, a copy of a letter addressed to plaintiff by defendant. Defendant *prays* for judgment dismissing the suit.

The letter referred to reads as follows;-

" April, 5th. 1917.

Mr. R. Mc. Williams. -810 Common St.
    City;-

240

"Dear Sir;-

" This is to notify you that I have taken down

" your signs at 2837-39 Berlin Street, as my

" contract with you has expired and wont need

" your services any longer, so far I have had

" no applicants. As I am living in the place,

" will attend to it myself, thanking you for

" your attention, I remain,
                                    Yours Respectfully,

                                    Frank Reith. "
The testimony of plaintiff endevoring to prove an
attempt to sell the property in question goese on to
state, that he listed, advertised and reported in the
usual method of selling property.

Q- What about carding it?

A- I am not sure whether I had it carded or not, but I
judge it must have been. Yes, I see the cards shows a
sign was ordered.

Q- It is set forth in the answer, Mr. Mc. Williams, that
Mr. Reith, on April 5th. 1917, gave you a notice in writ-
ing, withdrawing this property from your hands. Did you
ever receive such notice?

A- Did'nt receive it.

Carbon copy of letter shown witness.

Q- In answer to that letter did Mr. Reith call upon you?

A- He did.

Q- That letter is dated August 22nd, 1917, and I ask leave
to read it into this record instead of copying it.   And
the letter was read.

Q- That was signed by you?

A- Yes.

Q- Did Mr. Reith call upon you?

A- He did.

Q- What did he say in reference to that?

241

A- He expressed suprise at receiving a bill, he said he had overlooked the fact that I had agency for the property.

Q- Did he, at that time, claim or say anything to you of having revoked the agency? -A- He did not.

Q- What effort, if any, did he make to settle the bill? A- Make no effort.

On cross examination, this witness, being asked in what manner he offered the property, whether he had advertised, whether he had carded it, substantially testified;-

" I generally advertise in the Times-Picayune, generally in fact, always in fact. "

Q- Do you keep records in your office, Mr. Mc. Williams, of advertisements of property? -A- I do not.

Q- Do you remember submitting this property to anybody? A- No, Sir} I have no distinct recollection of submitting it to anybody.

That closed plaintiffs case.

In behalf of defendant, he himself, swears that the carbon copy of the letter offered in this case, and filed in evidence, was written by him in the original and addressed to plaintiff; mailed to plaintiff by a Miss Carrie Osborn, a young lady working for him at his place of business. He did not mail it himself but the lady in question did.

Q- Did you tell plaintiff about this letter? -A- Yes.

Q- But plaintiff denied that he received the letter? A- He did'nt say anything about it.

Miss Osborn, worked for defendant on April, 5th. 1917, she was asked;

Q- Did you mail the original of this letter to Mr. Mc. Williams?- at the time? -A- Yes, Sir,

Q- To whom did you deliver that letter? -A- To the mail man. *Mr. William,*

Q- You had worked for Mr. ⟶ prior to this? -A- Yes.

242

Mr. Mc. Williams, recalled under cross examination and
examined by Counsel for defendant, testified;-

Q- Q- Mr. Mc. Wiiliams,was your correct address 810 Com-
mon Street? -A- Yes.

Q- On April 5th. 1917? -A- Yes.

Q- Who opened the mail as it is received?

A- I always open my mail.

Q- No one else opens the mail? -A- No.

Q- Did you receive any such letter from Mr. Reith?

AQ No.

This is not a novel question. It has frequently been
passed upon by this Court and the Supreme Court of Louis-
iana. Counsel for plaintiff relies mainly upon the case
of Freeman vs. Dibold. 11 Court Appeal. 199, in that
case the contract read as follows;-

"I hereby appoint David Freeman my agent, and authorize
him to sell my property for the price. I agree not to
interfere in the sale of the property during the term of
this contract. I also agree to refer all applicants for the
purchase of the property to my agent. When this property is
sold I agree to pay him, my agent, a commission of two per
cent".

There was an active violation of Freeman's rights as
decided in that case in the interference and sale by
Dibold without any legal right.

Following this we find in 12 Court of Appeal. 385.
Kostmeyer vs. Landry, where the court decides in a con-
tract of the character of the one inquestion, where
without cause defendant interferes with plaintiff's
agency and without notification, judgment will be in
favor of plaintiff, as the contract was for value and
not a nudgum pactum."

And, in No. 7518, Harvey vs, Hirsch, not yet reported,
this Court, through his Honor, Judge Claiborne, quoting

243

with approval the opinion of the lower Court, " that
plaintiff spent a great deal of time in endevoring to
interest prospective purchasers, and while the said
contract was in full force and effect, never having
received any notice that defendant desired same dis-
continued, Hirsch sold the property to Karl Adler for
$3.500.00., and refused to pay plaintiff the three per
cent stipulated in said contract as above detailed".
The Court goes on further;- "Plaintiff, as a witness,
testified, that he advertised the property several times
and submitted it to prospective purchasers, and was
endexaxing advertising the property, at the time it was xa
sold by Hirsch". For these and sundry reasons this cause
was decided in favor of plaintiff.

The latest expression of opinion of this Court is the
case of Harvey vs, Garcia. No. 7797, not yet reported;
the syllabus citing Arts.3038 & 3030. R. C. C. and
Taylor et. al. vs. Martin, 149 La. 143., in that case
as in this case, an attempt was made to hold defendant
liable for brokerage and attorneys fees and denial made
of receipt of letter revoking power to sell. rThe only
difference between that case and this, was that in this
case it is claimed that not having sent the revocation
within five days after the first 180 days expired that
forever ended the defendants right to revoke. The author
ities are abundant and to the contrav effect.

It is evidence and it has been proven to our satisfact-
ion, that the letter quoted, carbon copy in the record,
written by defendant and addressed to plaintiff, at his
place of business on Common Street, one of the principle
thoroughfares in the City of New Orleans, and handed to
the mail carrier by an employee of defendant, must, in
our opinion notwithstanding the denial of plaintiff, have
been received by him. It is impossible at this late date

244

to believe otherwise. Every precaution was taken by defen-
dant in mailing this letter, given to the ~~postman~~, and *mail carrier*
when received, it was an absolute and final notice that
plaintiff had no further control over this property; that
his mandate of sale ~~ceased~~. *had expired*

For the reasons herein assigned, it is ordered, adjudged
and decreed, that the judgment of the lower Court be and ∔
is hereby affirmed with costs of both Courts against plaint-
tiff.

(Judgment Affirmed)

————

*St. Paul, J. dissents, on the ground that the mailing of a letter is not proof that it was received.*